## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EMMA HALLING, Individually and on behalf of all others similarly situated,** | : : : : | Civil Action No. _____ |
| | | **CLASS ACTION COMPLAINT** |
| **Plaintiff,** | : : | |
| | : : | **JURY TRIAL DEMANDED** |
| **v.** | : : | |
| **ISOLATOR FITNESS, INC.,** | : : | |
| **Defendant.** | : | |

Plaintiff, Emma Halling ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through the undersigned counsel, hereby files this Class Action Complaint and Jury Demand against Isolator Fitness, Inc. ("Defendant" or "Isolator Fitness") for damages, injunctive relief, equitable relief, and any other relief deemed just and proper arising from Defendant's violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Federal Communications Commission ("FCC") rules promulgated thereunder, 47 C.F.R. §§ 64.1200(d) and (e) ("Rules").

### NATURE OF THE CASE

1.      Plaintiff brings this Class Action Complaint against Defendant to redress Defendant's willful violations of the TCPA and the Rules by sending telemarketing texts to Plaintiff's telephone and the telephones of other class members using automatic telephone dialing systems ("ATDS") without their prior express consent, and by placing telemarketing texts to Plaintiff's and other class members' cellular telephones in the absence of or after they had withdrawn any consent for such calls.

**JURISDICTION AND VENUE**

2.      This Court has original federal question and subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq.*  This action arises under the laws of the United States.

3.      Venue is proper under 28 U.S.C. § 1391 inasmuch as the Defendant is based in this District in Reading, Pennsylvania, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

4.      At all times relevant, Defendant conducted, and continues to conduct, a substantial amount of business activity and violated the TCPA and Rules, in whole or in part, in this judicial district.  Defendant is registered to conduct business in the Commonwealth of Pennsylvania and in this District, and engaged in interstate commerce when it called or attempted to call Plaintiff and the members of the proposed Classes (defined below) in this District.  Defendant also advertised and promoted its business and derived substantial revenue in this District.

**THE PARTIES**

5.      Plaintiff Emma Halling is a resident and citizen of the State of California.

6.      Defendant Isolator Fitness is a corporation formed under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1801 North 12th Street, No. 102, Reading, Pennsylvania 19604.  It is a manufacturer and online retailer of backpacks, food containers, and related products.

7.      Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, agents, servants, or employees committed such act or omission and that, at the time such act or omission was committed, it was

done with the actual or apparent authority, ratification or approval of the Defendant, or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## LEGAL BASIS FOR COMPLAINT

8.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . . ."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).  The statute requires the FCC to promulgate rules to protect telephone subscribers' privacy rights, 47 U.S.C. § 227(c), and permits a private right of action for violations of such rules.  47 U.S.C. § 227(c)(5).

9.     All calls and text messages to cellular telephones placed using an automatic telephone dialing system violate the TCPA if the calling party does not first obtain prior express consent from the called party.  47 U.S.C. § 227(b)(i)(A)(iii) and (B).  The FCC has determined that this statute encompasses calls placed by text messaging, as well as voice calls.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Dkt. No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Dkt. No. 02-278, Report and Order, 30 FCC Rcd. 7961, 8016-18, ¶¶ 107-110 (2015) ("2015 FCC Order"). The FCC has defined prior express consent as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 464.1200(f)(8).

-3-

10.     The TCPA provides for statutory damages of $500 for each call placed in violation of TCPA and the Rules, which may be trebled if the violation is willful.  47 U.S.C. § 227(b)(3) (text transmitted through ATDS without consent); 47 U.S.C. § 227(c)(5) (text transmitted after request that transmissions cease).

11.     In addition, the FCC rules allow customers to make "do-not-call" requests, that companies must honor and track in internal do-not-call lists.  47 U.S.C. § 227(c)(1)(A); 47 C.F.R. § 64.1200.  TCPA creates a private right of action for violation of this rule.

### FACTS RELATING TO PLAINTIFF

12.     In 2015, Plaintiff purchased a backpack and food storage containers from Defendant through Defendant's online channels.  Plaintiff made one additional purchase of food storage containers in February 2016 and then did no further business with Defendant.

13.     Isolator Fitness' website requires customers to provide a telephone number to complete an order.  There is no indication on the order page that the telephone number provided might be used for telemarketing.

14.     Isolator's privacy policy in effect in 2015, when Plaintiff first made a purchase from Isolator, contains no indication that telephone numbers collected from customers may be used to distribute telemarketing texts.  Exhibit 1.

15.     The 2015 privacy policy states that the policy may be changed, and "the then-current privacy policy applies to all Personal Data . . . ."  Exhibit 1 at 4.

16.     The privacy policy in effect at the time of the most recent text messages states: "When you provide us with personal information to complete a transaction, . . . we imply that you consent to our collecting it and using it for that specific reason only."  Exhibit 2.  There is no

indication in this policy that customers are deemed to have consented to be contacted for telemarketing purposes.

17.     Defendant began delivering text messages to Plaintiff's cellular telephone, which has the final four digits 2587, no later than January 22, 2016.  On that date, Plaintiff received a text message from Defendant advertising a downloadable e-book Defendant had recently published.

18.     The following is a screenshot of the January 22, 2016 text:



19.     Plaintiff received another text message from Defendant on August 2, 2016.  The message advertised "incredible deals" and included a hypertext link for Plaintiff to view and purchase the promoted products.

20.     The following is a screenshot of the August 2, 2016 text:



21.     Defendant's unsolicited text messaging continued into the following year.  On November 24, 2017, Defendant delivered Plaintiff a text message advertising a "Black Friday" sale.  The message included a hypertext link for Plaintiff to view and purchase the promoted products.

22.     Plaintiff wished not to receive further telemarketing text messages from Defendant.  She responded to the November 24, 2017 text with a single word: "UNSUBSCRIBE".

23.     The following is a screenshot of the November 24, 2017 text and Plaintiff's response:



24.     Despite Plaintiff's request to unsubscribe from its telemarketing list, Defendant

sent her two more texts just three days later, on November 27, 2017.

25.     The first such text was delivered to Plaintiff's cellular telephone at approximately

8:24 a.m. that day.  The message advertised Defendant's "Cyber Monday" sale and included a

hypertext link for Plaintiff to view and purchase the promoted products.  Notably, the message

also invited Plaintiff to "Reply STOP to opt out" of further telemarketing text messages.

26.     Plaintiff responded "STOP" as directed shortly after receiving that message.

27.     Despite Plaintiff's unambiguous direction to "STOP" further telemarketing,

Defendant delivered a second text message to her cellular telephone at approximately 4:01 p.m.

on November 27, 2017.  Like the earlier one, this message advertised Defendant's Cyber

Monday sale and included a hypertext link for Plaintiff to view and purchase the promoted

products.

28.     The following is a screenshot of the three text messages Plaintiff exchanged with Defendant on November 27, 2017:



29.     Once again, Defendant ignored Plaintiff's unambiguous request to stop sending her telemarketing text messages.  Plaintiff received unsolicited text messages from Defendant on each of Valentine's Day (February 14, 2018), Presidents Day (February 19, 2018), St. Patrick's Day (March 17, 2018), and Easter Sunday (April 1, 2018).

30.     Each of the text messages described in paragraph 29 above advertised a holiday sale and included a hypertext link for Plaintiff to view and purchase products.

31.     Screenshots of the text messages described in paragraph 29 are included in Exhibit 3 attached hereto.

32.     The 2016 text messages described in paragraphs 17-20 above were sent from telephone number (267) 202-0896.  The Easter Sunday text message described in paragraph 29

above was sent from telephone number (610) 624-2173.  All of the other text messages Plaintiff

received from Defendant as described herein were sent from SMS short code 81787.

33.     SMS short codes are abbreviated telephone numbers -- usually five digits in the

United States -- that are used exclusively for text messaging.  They are commonly used for high-

volume, automated text campaigns.  They are not designed for individualized person-to-person

communication.

34.     Defendant delivered the text messages received by Plaintiff and the other

members of the Classes using an automatic telephone dialing system as defined by the TCPA

and the Rules.  The messages were delivered en masse and without human intervention, using

equipment that has the capacity to store or produce telephone numbers to be called, using a

random of sequential number generator, and to dial such numbers.  None of the messages

included Plaintiff's name or other personalized content.  They were just generic "spam"

advertisements.

35.     Defendant delivered the text messages received by Plaintiff and the other

members of the Classes for the purpose of marketing its products.  The calls made to deliver

those messages were placed without the prior express consent, written or otherwise, of Plaintiff

or the other members of the Classes.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a),

(b)(2), and (b)(3) on behalf of herself and the following classes (the "Classes"):

> All individuals in the United States whose telephone numbers had been
> assigned to cellular phones, and who received texts sent by or on behalf of
> Defendant placed through the use of an automatic telephone dialing
> system from June 1, 2014 to the date this Class is certified, without prior
> express consent (the "Non-Consent Class"); and

All individuals in the United States who received telemarketing texts sent by or on behalf of Defendant to the individual's telephone from June 1, 2014 to the date this Class is certified, where the individuals contacted had previously requested that Defendant stop texting (the "Stop Request Class").

37.     The following individuals are excluded from the proposed classes:  (1) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and the current or former officers and directors of any of the foregoing; (2) persons who properly execute and file a timely request for exclusion from the Classes; (3) the legal representatives, successors or assigns of any such excluded persons; and (4) persons whose claims against Defendant have otherwise been fully and finally adjudicated and/or released.

38.     Plaintiff reserves the right to amend the Class definitions and to seek recovery on behalf of additional persons as warranted as additional facts are learned in further investigation and discovery.

39.     Plaintiff and the members of the proposed Classes were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members without their prior express consent, thereby invading the privacy of Plaintiff and Class members, and subjecting Plaintiff and the Class members to annoying and harassing texts that constitute a nuisance.

**NUMEROSITY**

40.     The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

41.     Defendant is an online retailer in a nationwide marketplace.  According to a 2015 article by the Reading Eagle, Defendant's annual sales surpassed $4 million in 2014 and are

rapidly growing.  Given that most of Defendant's products sell for less than $200, Defendant likely has, at a minimum, thousands of customers, and all who ordered directly from Defendant provided telephone numbers.  Even assuming that Defendant delivered text messages only to its existing customers with cellular telephones, at least several hundred persons must have received them.

## COMMONALITY

42.     There are many questions of law and fact common to the claims of Plaintiff and the proposed Classes, and those questions predominate over any questions that may affect individual members of the proposed Classes.

43.     Common questions for the proposed Classes include, but are not necessarily limited to the following:

a.     Whether Defendant had a business practice of texting persons for telemarketing purposes on their cellular phones without their prior express consent;

b.     Whether Defendant used an ATDS for its telemarketing via text program;

c.     Whether Defendant's conduct violated the TCPA;

d.     Whether Class members are entitled to treble damages based on the willful and/or knowing nature of Defendant's conduct; and

e.     Whether Defendant should be enjoined from engaging in such conduct in the future.

## TYPICALITY

44.     Plaintiff's claims are typical of the claims of the other members of the Classes.

45.     Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

## ASCERTAINABILITY

46.     Among other things, members of the proposed Classes can be ascertained through Defendant's records.  Defendant maintains computerized records showing the names and telephone numbers that it calls.

## ADEQUACY OF REPRESENTATION

47.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions involving violations of federal and state consumer protection statutes, including claims under the TCPA.

48.     Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

## SUPERIORITY

49.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given, among other things, that joinder of all parties is impracticable.  Classwide relief is essential to compel Defendant to comply with the TCPA.

50.     The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

51.     Even if members of the proposed Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

Economies of time, effort and expense will be fostered and uniformity of decisions ensured. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate.  Moreover, on information and belief, Plaintiff alleges that the TCPA and Rules complained of herein are substantially likely to continue in the future if an injunction is not entered.

### FIRST CLAIM FOR RELIEF

#### Violations of the TCPA, 47 U.S.C. § 227(b)
#### (On behalf of Plaintiff and the Non-Consent Class)

52.     Plaintiff re-alleges and incorporates by reference each and every allegation of this Complaint contained in each of the previous paragraphs, as if more fully set forth herein.

53.     Defendant transmitted texts to Plaintiff on her cellular phone that were made using an ATDS, without her prior express consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

54.     Defendant's acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

55.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.* and the Rules, Plaintiff and each member of the proposed Non-Consent Class are entitled to damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

56.     Plaintiff and the members of the proposed Non-Consent Class are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

## SECOND CLAIM FOR RELIEF

### Violations of the TCPA, 47 U.S.C. § 227(c) and
### 47 C.F.R. § 64.1200(d) and (e)
### (On behalf of Plaintiff and the Stop Request Class)

57.     Plaintiff re-alleges and incorporates by reference each and every allegation of this Complaint contained in each of the previous paragraphs, as if more fully set forth herein.

58.     Defendant transmitted texts to Plaintiff on her cellular phone after she had requested that the texts stop, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(d) and (e).

59.     Defendant's acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.* and the Rules.

60.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.* and the Rules, Plaintiff and each member of the proposed Stop Request Class are entitled to damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

61.     Plaintiff and the members of the proposed Stop Request Class are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests the following relief:

a.      An order certifying this matter as a class action pursuant to Federal Rule of Civil Procedure 23 with Plaintiff as Class Representative;

b. An order designating Berger & Montague, P.C. and Hunter & Kmiec as Class Counsel;

c. An award of actual and statutory damages of $500 for each and every statutory violation pursuant to 47 U.S.C. § 227(b)(3)(B) and/or 47 U.S.C. § 227(c)(5);

d. An award of actual and statutory damages of up to $1,500 for each and/or every willful/and or wanton violation pursuant to 47 U.S.C. § 227(b)(3)(B) and/or 47 U.S.C. § 227(c)(5); and

e. Injunctive relief prohibiting such violations of the TCPA and Rules by Defendant in the future;

f. Pre-judgment interest on monetary relief; and

g. Post-judgment interest on monetary relief.

## PRAYER FOR RELIEF

Plaintiff requests a trial by jury on all issues so triable.

Dated:  May 18, 2018                      BERGER & MONTAGUE, P.C.

By: _____
Shanon J. Carson (Bar No. 85957)
Arthur Stock (Bar No. 64336)
Lane L. Vines (Bar No. 80854)
1622 Locust Street
Philadelphia, PA  19103
Tel.:       215/875-3000
Fax:       215/875-4604
Email:    scarson@bm.net
             astock@bm.net
             lvines@bm.net

HUNTER & KMIEC
James A. Hunter (*)
255 West 94th Street, No. 10M
New York, NY  10025
Tel.:    646/666-0122
Fax:     646/462-3356
Email: hunter@hunterkmiec.com

(*) Motion for admission *pro hac vice* to be filed

*Attorneys for Plaintiff and the Proposed Classes*

# Exhibit 1



HOME | MY ACCOUNT | ABOUT US | FAQ/HELP | CONTACT US



SPECIAL ISOPACK PRICING! - $139.95
MUST USE COUPON CODE: ISOPACK10

SHOP NOW!

## PRODUCTS

**ISOBAG**

**CUSTOM ISOBAGS**

**ORIGINAL COLORS**

**LTD FULL COLOR**

**MILITARY EDITION**

**MOSSY OAK**

**SPECIAL EDITION**

**ISOBAG ACCESSORIES**

**Privacy Policy**

**Privacy Policy of isolatorfitness.com**

This Application collects some Personal Data from its Users.

**Data Controller and Owner**

Isolator Fitness Inc,
info@isolatorfitness.com

**Types of Data collected**

Among the types of Personal Data that this Application collects, by itself or through third parties, there are: Cookie, Usage Data, Email, First Name, Last Name and Phone number. Other Personal Data collected may be described in other sections of this privacy policy or by dedicated explanation text contextually with the Data collection. The Personal Data may be freely provided by the User, or collected automatically when using this Application. Any use of Cookies - or of other tracking tools - by this Application or by the owners of third party services used by this Application, unless stated otherwise, serves to identify Users and remember their preferences, for the sole purpose of providing the service required by the User. Failure to provide certain Personal Data may make it impossible for this Application to provide its services. The User assumes responsibility for the Personal Data of third parties published or shared through this Application and declares to have the right to communicate or broadcast them, thus relieving the Data Controller of all responsibility.

**Mode and place of processing the Data**

*Method of processing*

The Data Controller processes the Data of Users in proper manner and shall take appropriate security measures to prevent unauthorized access, disclosure, modification or unauthorized destruction of the Data. Access to the Data may be available to Data Processors, if appointed, as well as employees involved with the processing. Access to Data may be also available to external parties providing services to the Data Controller such as third party technical service providers, mail carriers, hosting providers, IT companies, communication agencies. The updated list of these parties may be requested from the Data Controller at any time.

**Place**
The Data is processed at the Data Controller headquarters, unless stated otherwise in the rest of this document.

**Conservation Time**

The Data is kept for the time necessary to provide the service requested by the User, or stated by the purposes outlined in this document, and the User can always request the Data Controller for their suspension or removal.

**The use of the collected Data**

The Data concerning the User is collected to allow the Application to provide its services, as well as for the following purposes: Analytics, Managing email addresses and sending messages, Displaying content from external platforms, Interaction with external social networks and platforms, Handling payments, Contacting the User, Access to third party services' accounts, Remarketing and Behavioral Targeting, Commercial affiliation, Content commenting and Content performance and features testing (A/B testing). The Personal Data used for each purpose is outlined in the specific sections of this document.

**Facebook permissions asked by this Application**

This Application may ask some Facebook permissions allowing it to perform actions with the User's Facebook account and to retrieve information, including Personal Data, from it. For more information about the following permissions, refer to the Facebook permissions documentation and to the Facebook privacy policy. The permissions asked are the following:

**Basic information**

By default, this includes certain User's Data such as id, name, picture, gender, and their locale. Certain connections of the User, such as the Friends, are also available. If the user has made more of their data public, more information will be available.

**Access Friend Lists**

Provides access to any friend lists the user created.

**Contact email**

Access the user's contact email address.

**Email**

Provides access to the user's primary email address.

**Detailed information on the processing of Personal Data**

Personal Data is collected for the following purposes and using the following services:

*Access to third party services' accounts*

These services allow this Application to access Data from your account on a third party service and perform actions with it. These services are not activated automatically, but require explicit authorization by the User.

*Access to the Facebook account (This Application)*

This service allows this Application to connect with the User's account on the Facebook social network, provided by Facebook Inc. Permissions asked: Access Friend Lists, Contact email and Email. Place of processing: USA – Privacy Policy

*Analytics*

The services contained in this section enable the Owner to monitor and analyze web traffic and can be used to keep track of User behavior.

*Google Analytics (Google)*

Google Analytics is a web analysis service provided by Google Inc. ("Google��?). Google utilizes the Data collected to track and examine the use of this Application, to prepare reports on its activities and share them with other Google services. Google may use the Data collected to contextualize and personalize the ads of its own advertising network. Personal Data collected: Cookie and Usage Data. Place of processing: USA – Privacy Policy – Opt Out

*Wordpress Stats (Automattic Inc.)*

Wordpress Stats is an analytics service provided by Automattic Inc. Personal Data collected: Cookie and Usage Data. Place of processing: USA – Privacy Policy

*Commercial affiliation*

These services allow this Application to display advertisements for third party products or services. Ads can be displayed either as advertising links or as banners using various kinds of graphics. Clicks on the icon or banner posted on the Application are tracked by the third-party services listed below, and are shared with this Application. For details of which data are collected, please refer to the privacy policy of each service.

*Amazon Affiliation (Amazon)*

Amazon Affiliation is a commercial affiliation service provided by Amazon.com Inc. Personal Data collected: Cookie and Usage Data. Place of processing: USA – Privacy Policy

*Contacting the User*

Mailing List or Newsletter (This Application) By registering to the mailing list or to the newsletter, the User's email address will be added to the contact list of those who may receive email messages containing information of commercial or promotional nature concerning this Application. Your email address might also be added to this list as a result of signing up to this Application or after performing a purchase. Personal Data collected: Email, First Name, Last Name and Phone number.

*Content commenting*

Content commenting services allow Users to make and publish their comments on the contents of this Application. Depending on the settings chosen by the Owner, Users may also leave anonymous comments. If there is an email address among the Personal Data provided by the User, it may be used to send notifications of comments on the same content. Users are responsible for the content of their own comments. If a content commenting service provided by third parties is installed, it may still collect web traffic data for the pages where the comment service is installed, even when users do not use the content commenting service.

*Facebook Comments (Facebook)*

Facebook Comments is a content commenting service provided by Facebook Inc. enabling the User to leave comments and share them on the Facebook platform. Personal Data collected: Cookie and Usage Data. Place of processing: USA – Privacy Policy

*Content performance and features testing (A/B testing)*

*Displaying content from external platforms*

These services allow you to view content hosted on external platforms directly from the pages of this Application and interact with them. If a service of this kind is installed, it may still collect web traffic data for the pages where the service is installed, even when users do not use it.

### Youtube video (Google)

Youtube is a video content visualization service provided by Google Inc. that allows this Application to incorporate content of this kind on its pages. Personal Data collected: Cookie and Usage Data. Place of processing: USA – Privacy Policy

### Handling payments

### Interaction with external social networks and platforms

These services allow interaction with social networks or other external platforms directly from the pages of this Application. The interaction and information obtained by this Application are always subject to the User's privacy settings for each social network. If a service enabling interaction with social networks is installed it may still collect traffic data for the pages where the service is installed, even when Users do not use it.

#### Twitter Tweet button and social widgets (Twitter)

The Twitter Tweet button and social widgets are services allowing interaction with the Twitter social network provided by Twitter Inc. Personal Data collected: Cookie and Usage Data. Place of processing: USA – Privacy Policy

#### Pinterest "Pin it��? button and social widgets (Pinterest)

The Pinterest "Pin it��? button and social widgets are services allowing interaction with the Pinterest platform provided by Pinterest Inc. Personal Data collected: Cookie and Usage Data. Place of processing: USA – Privacy Policy

#### Facebook Like button and social widgets (Facebook)

The Facebook Like button and social widgets are services allowing interaction with the Facebook social network provided by Facebook Inc. Personal Data collected: Cookie and Usage Data. Place of processing: USA – Privacy Policy

#### Managing email addresses and sending messages

These services make it possible to manage a database of email contacts to communicate with the User via email. The services are used to collect data concerning the date and time when the mail is viewed by the User, as well as when the User interacts with incoming mail, such as by clicking on links included in the email.

#### Mailchimp (Mailchimp)

Mailchimp is an email address management and message sending service provided by Mailchimp Inc. Personal Data collected: Email. Place of processing: USA – Privacy Policy

#### Remarketing and Behavioral Targeting

These services allow this Application and its partners to inform, optimize and serve advertising based on past use of this Application by the User. This activity is performed by tracking Usage Data and by using Cookies, information that is transferred to the partners that manage the remarketing and behavioral targeting activity.

#### AdRoll (Semantic Sugar, Inc.)

AdRoll is an advertising service provided by Semantic Sugar, Inc. Personal Data collected: Cookie and Usage Data. Place of processing: USA – Privacy Policy

### Additional information about Data collection and processing

### Legal Action

The User's Personal Data may be used for legal purposes by the Data Controller, in Court or in the stages leading to possible legal action arising from improper use of this Application or the related services.

### Additional Information about User's Personal Data

In addition to the information in this privacy policy, this Application may provide the User with contextual information concerning particular services or the collection and processing of Personal Data.

### System Logs and Maintenance

For operation and maintenance purposes, this Application and any third party services may collect files that record interaction with this Application (System Logs) or use for this purpose other Personal Data (such as IP Address).

### Information not contained in this policy

More details concerning the collection or processing of Personal Data may be requested from the Data Controller at any time at its contact information.

### The rights of Users

Users have the right, at any time, to know whether their Personal Data has been stored and can consult the Data Controller to learn about their contents and origin, to verify their accuracy or to ask for them to be supplemented, cancelled, updated or corrected, or for their transformation into anonymous format or to block any data held in violation of the law, as well as to oppose their treatment for any and all legitimate reasons. Requests should be sent to the Data Controller at the contact information set out above.

### Changes to this privacy policy

The Data Controller reserves the right to make changes to this privacy policy at any time by giving notice to its Users on this page. It is strongly recommended to check this page often, referring to the date of the last modification listed at the bottom. If a User objects to any of the changes to the Policy, the User must cease using this Application and can request the Data Controller to erase the Personal Data. Unless stated otherwise, the then-current privacy policy applies to all Personal Data the Data Controller has about Users.

### Information about this privacy policy

The Data Controller is responsible for this privacy policy, prepared starting from the modules provided by Iubenda and hosted on the Iubenda's servers.

### Definitions and legal references

#### *Personal Data (or Data)*

Any information regarding a natural person, a legal person, an institution or an association, which is, or can be, identified, even indirectly, by reference to any other information, including a personal identification number.

#### *Usage Data*

Information collected automatically from this Application (or third party services employed in this Application ), which can include: the IP addresses or domain names of the computers utilized by the Users who use this Application, the URI addresses (Uniform Resource Identifier), the time of the request, the method utilized to submit the request to the server, the size of the file received in response, the numerical code indicating the status of the server's answer (successful outcome, error, etc.), the country of origin, the features of the browser and the operating system utilized by the User, the various time details per visit (e.g., the time spent on each page within the Application) and the details about the path followed within the Application with special reference to the sequence of pages visited, and other parameters about the device operating system and/or the User's IT environment.

#### *User*

The individual using this Application, which must coincide with or be authorized by the Data Subject, to whom the Personal Data refer.

### Data Subject

The legal or natural person to whom the Personal Data refers to.

### Data Processor

The natural person, legal person, public administration or any other body, association or organization authorized by the Data Controller to process the Personal Data in compliance with this privacy policy.

### Data Controller (or Application Owner, or Owner)

The natural person, legal person, public administration or any other body, association or organization with the right, also jointly with another Data Controller, to make decisions regarding the purposes, and the methods of processing of Personal Data and the means used, including the security measures concerning the operation and use of this Application. The Data Controller, unless otherwise specified, is the Owner of this Application.

### This Application

The hardware or software tool by which the User Personal Data is collected.

### Cookie

Small piece of data stored in the User's device.

### Legal information

Notice to European Users: this privacy statement has been prepared in fulfillment of the obligations under Art. 10 of EC Directive n. 95/46/EC, and under the provisions of Directive 2002/58/EC, as revised by Directive 2009/136/EC, on the subject of Cookies. This privacy policy is solely about this Application. Latest update: December 19, 2013

### FOR CUSTOMERS:

Isolator Fitness has the right to cancel any order at anytime for any reason. Customers cannot negotiate pricing, mislead our staff, or attempt to use multiple coupon codes.

Terms: Privacy

ABOUT US    COMING SOON! Learn More...

CONNECT WITH US

## ABOUT OUR COMPANY

Company Info / Contact Us

Email Us

E-Newsletter

Affiliate Sign-Up / Affiliate Login

Wholesale Sign-Up

## YOUR ACCOUNT

View Cart

Sign In

Order Status

Help/FAQ

Privacy Policy

## HELPFUL INFORMATION

Warranty

Shipping & Returns

Category Index

Site Map

Terms & Conditions

## OUR NEWSLETTER!

Get the latest news and information right to your mailbox!

Copyright © 2014 Isolator Fitness. All Rights Reserved.

# Exhibit 2

Log in    Create account    🛒 0



Got a Question? Call Us
**610-370-7915**
Mon-Fri 9am-5pm Eastern
support@isolatorfitness.com



Meal Prep Bags     Accessories     Lifting Straps     ISOPASTA     Supplements     Resources

Meal Planner

🏠 Home ▸ Privacy Policy

# Privacy Policy

Home - Terms Of Use - Privacy Policy -

## 1. WHAT DO WE DO WITH YOUR INFORMATION?-

When you purchase something from our store, as part of the buying and selling process, we collect the personal information you give us such as your name, address and email address.
When you browse our store, we also automatically receive your computer's internet protocol (IP) address in order to provide us with information that helps us learn about your browser and operating system.
Email marketing (if applicable): With your permission, we may send you emails about our store, new products and other updates.

## 2. CONSENT-

How do you get my consent?
When you provide us with personal information to complete a transaction, verify your credit card, place an order, arrange for a delivery or return a purchase, we imply that you consent to our collecting it and using it for that specific reason only.
If we ask for your personal information for a secondary reason, like marketing, we will either ask you directly for your expressed consent, or provide you with an opportunity to say no.
How do I withdraw my consent?

If after you opt-in, you change your mind, you may withdraw your consent for us to contact you, for the continued collection, use or disclosure of your information, at anytime, by contacting us at support@isolatorfitness.com or mailing us at:
Isolator Fitness
1801 N 12th Street Reading Pennsylvania US 19604


## 3. **DISCLOSURE**-

We may disclose your personal information if we are required by law to do so or if you violate our Terms of Service.


## 4. **SHOPIFY**-

Our store is hosted on Shopify Inc. They provide us with the online e-commerce platform that allows us to sell our products and services to you.
Your data is stored through Shopify's data storage, databases and the general Shopify application. They store your data on a secure server behind a firewall.
Payment:
If you choose a direct payment gateway to complete your purchase, then Shopify stores your credit card data. It is encrypted through the Payment Card Industry Data Security Standard (PCI-DSS). Your purchase transaction data is stored only as long as is necessary to complete your purchase transaction. After that is complete, your purchase transaction information is deleted.
All direct payment gateways adhere to the standards set by PCI-DSS as managed by the PCI Security Standards Council, which is a joint effort of brands like Visa, Mastercard, American Express and Discover.
PCI-DSS requirements help ensure the secure handling of credit card information by our store and its service providers.
For more insight, you may also want to read Shopify's Terms of Service (https://www.shopify.com/legal/terms) or Privacy Statement (https://www.shopify.com/legal/privacy).


## 5. **THIRD-PARTY SERVICES**-

In general, the third-party providers used by us will only collect, use and disclose your information to the extent necessary to allow them to perform the services they provide to us.
However, certain third-party service providers, such as payment gateways and other payment transaction processors, have their own privacy policies in respect to the information we are required to provide to them for your purchase-related transactions.
For these providers, we recommend that you read their privacy policies so you can

understand the manner in which your personal information will be handled by these providers.

In particular, remember that certain providers may be located in or have facilities that are located a different jurisdiction than either you or us. So if you elect to proceed with a transaction that involves the services of a third-party service provider, then your information may become subject to the laws of the jurisdiction(s) in which that service provider or its facilities are located.

As an example, if you are located in Canada and your transaction is processed by a payment gateway located in the United States, then your personal information used in completing that transaction may be subject to disclosure under United States legislation, including the Patriot Act.

Once you leave our store's website or are redirected to a third-party website or application, you are no longer governed by this Privacy Policy or our website's Terms of Service.

Links

When you click on links on our store, they may direct you away from our site. We are not responsible for the privacy practices of other sites and encourage you to read their privacy statements.

Google analytics:

Our store uses Google Analytics to help us learn about who visits our site and what pages are being looked at.

## 6. **SECURITY**-

To protect your personal information, we take reasonable precautions and follow industry best practices to make sure it is not inappropriately lost, misused, accessed, disclosed, altered or destroyed.

If you provide us with your credit card information, the information is encrypted using secure socket layer technology (SSL) and stored with a AES-256 encryption. Although no method of transmission over the Internet or electronic storage is 100% secure, we follow all PCI-DSS requirements and implement additional generally accepted industry standards.

## 7. **COOKIES**-

Here is a list of cookies that we use. We've listed them here so you that you can choose if you want to opt-out of cookies or not.

_session_id, unique token, sessional, Allows Shopify to store information about your session (referrer, landing page, etc).

_shopify_visit, no data held, Persistent for 30 minutes from the last visit, Used by our website provider's internal stats tracker to record the number of visits

_shopify_uniq, no data held, expires midnight (relative to the visitor) of the next day, Counts the number of visits to a store by a single customer.

cart, unique token, persistent for 2 weeks, Stores information about the contents of your cart.

_secure_session_id, unique token, sessional

storefront_digest, unique token, indefinite If the shop has a password, this is used to determine if the current visitor has access.

PREF, persistent for a very short period, Set by Google and tracks who visits the store and from where

## 8. **AGE OF CONSENT**-

By using this site, you represent that you are at least the age of majority in your state or province of residence, or that you are the age of majority in your state or province of residence and you have given us your consent to allow any of your minor dependents to use this site.

## 9. **CHANGES TO THIS PRIVACY POLICY**-

We reserve the right to modify this privacy policy at any time, so please review it frequently. Changes and clarifications will take effect immediately upon their posting on the website. If we make material changes to this policy, we will notify you here that it has been updated, so that you are aware of what information we collect, how we use it, and under what circumstances, if any, we use and/or disclose it.

If our store is acquired or merged with another company, your information may be transferred to the new owners so that we may continue to sell products to you.

QUESTIONS AND CONTACT INFORMATION

If you would like to: access, correct, amend or delete any personal information we have about you, register a complaint, or simply want more information contact our Privacy Compliance Officer at support@isolatorfitness.com or by mail at

Isolator Fitness

[Re: Privacy Compliance Officer]

1801 N 12th Street Reading Pennsylvania US 19604

**Unhappy With Your Product? We'll Take It Back!**

**Secure Checkout**

We use encrypted SSL security to ensure that your credit card information is 100% protected.



We stand by our high-quality products and your satisfaction is 100% guaranteed. Items can be returned within 30 days of purchase. Food items can not be returned. Returns will be charged a 20% restocking fee.

    

# SIGN UP FOR NEWSLETTER & 20% OFF COUPON

Your Email

Become an Isolator Fitness Insider and get 20% off your order today. Plus we'll keep you up-to-date with the latest ISO news.

Our Story
Contact Us
Login
Earn Isocoins
FAQ
Terms & Conditions

Tour Of Isolator
Create Account
Ambassador Program
Warranty Registration
Return & Exchange Policy
Privacy Policy

Got a Question? Call Us
 610-370-7915
Mon-Fri 9am-5pm Eastern
support@isolatorfitness.com

© 2018 Isolator Fitness. All rights reserved.



# Exhibit 3



**Text Messages Sent**
**February 14, 2018 and February 19, 2018**



**Text Message Sent March 17, 2018**





**Text Message Sent April 1, 2018**